418    BEECHER v. PRESS PUBLISHING CO.

The plaintiff's farm was worth only $6,500, yet he comes into court seriously claiming damage to the amount of $75,000, as if any legitimate damage could exceed that which would have resulted from a complete destruction of the land. It is impossible to contemplate such a claim without that instinctive hostility which every attempt to deceive the court, and by its aid work out a fraud, deserves.

I have not deemed it necessary to cite authorities in support of the specific views which I have expressed. It is enough that they must commend themselves to the rational mind. It seems to be considered in some quarters that judges should not think any more on their own account; that they should spend their lives mousing through mouldy libraries in search of what other judges in a less enlightened age have said, not even upon the immediate question in hand, but upon some matter more or less distantly related. It is thought to be presumption to let one's own bucket down into the living well of reason, instead of being content to lick up from the muddy, trampled earth around it the green and stagnant leakage of the past. And so the science of law, which was once deemed the perfection of human reason, is being left behind by every other science.

The last word has not yet been said on any subject.

Judgment for nominal damages, without costs and without injunction.

Judgment accordingly.

---

EUGENE F. BEECHER, Plaintiff, v. THE PRESS PUBLISHING Co., Defendant.

(Supreme Court, Kings Trial Term, July, 1901.)

Libel — New trial after an appeal.

Upon an appeal from a judgment for the plaintiff upon the first trial of an action for a libel alleged to have charged the plaintiff with having dishonorably kept his aged father's securities, and in which only general damages were claimed, the Appellate Division decided that as the trial justice had held the publication not libelous *per se* he should have directed a verdict for the defendant, that the innuendo charged in the complaint, not being one which could be drawn from

the publication, was insufficient, and that the publication was not libelous *per se*. Upon a second trial the justice left it to the jury to say whether the publication imported the charge alleged, told them that if the charge alleged was made and was false the plaintiff had a right of action, permitted them to find, if an innuendo was necessary, that the one stated in the complaint, larceny, would cover a milder charge of the same nature, and instructed them that an innuendo was of little use provided the fair import of the words brought the minds of readers to the hurtful conclusion. The jury found for the defendant.

Held, that a motion to set aside the verdict must be denied as the jury must have found the publication not libelous, or that the facts proved justified the charge made.

Motion to set aside a verdict in an action for libel.

H. S. Worthley, for plaintiff.

Bowers & Sands (J. W. Gerard and M. L. Towns, of counsel), for defendant.

Russell, J. The plaintiff moves to set aside the verdict of the jury rendered for the defendant in his action for libel on account of a publication in the New York World. On a previous trial a verdict was given for the plaintiff for $4,000. This verdict was set aside and a new trial directed on appeal by the Appellate Division. Beecher v. Press Publishing Company, 60 App. Div. 537. The Appellate Division held that, as the trial justice charged the jury that the article was not libelous *per se*, he should have directed a verdict for the defendant; that the innuendo charged in the complaint being one which could not be drawn from the article was insufficient; and, at the close of the opinion, approved the principle as applicable to the case that the publication was not a libel *per se*.

Accordingly it became a serious question for the Trial Court upon the new trial as to whether, under the rules laid down by the Appellate Division, the case should go to the jury at all. But it seemed better by the court to take the verdict of the jury in order to end the litigation if possible. In rendering their

verdict the jury must have found that the article was not libelous, or that whatever was hurtful to the real character of the plaintiff was justified by the facts proved upon the trial. Therefore, it would be in derogation of the decision of the Appellate Division to set aside a verdict for the defendant, and thus rule that as a matter of law the jury should have found some damages by way of compensation for a substantial injury to the real character of the plaintiff in the publication of the article.

The publication was made in the *World* November 14, 1899, and is as follows:

### "Edward Beecher's Big Heart.

"There were many who regarded old Dr. Edward as the best and greatest of the Beecher family — the biggest-hearted and broadest-minded.

"Fifteen of these admirers, including the Rev. R. R. Meredith, Pastor of the Tomkins Avenue Congregational Church, and S. V. White, of Wall Street fame, gave one hundred dollars each, annually, to Dr. Beecher's support.

"At that time, early in the '90's, the only inmates of the Beecher house, in Macon Street, were the Doctor, his wife and their adopted daughter.

### "Eugene F. Beecher.

"Eugene F. Beecher, a younger son, married a wealthy Brooklyn girl and lived in a handsome house in Brooklyn; Frederick W. Beecher, the elder brother, was at that time a Presbyterian minister presiding over a church in the northern part of the state.

"'Come to see me at once,' wrote the old Doctor to Dr. Meredith one day, 'I am in sore trouble and need your advice.'

"Dr. Meredith lived at No. 97 McDonough Street, only a short distance from Dr. Beecher's house.

"Within ten minutes of the receipt of this alarming message the kindly pastor of Tomkins Avenue Congregational Church was with his old friend.

"Dr. Beecher then explained that his son Eugene had obtained possession of certain valuable securities belonging to him and had refused to return them.

"Investigation revealed the fact that Dr. Beecher had fallen heir to considerable property, including the Macon Street house, on the death of a relative.

"Eugene Returned Securities.

" Dr. Meredith handled Eugene Beecher without gloves.   In a letter to the young man, Dr. Meredith gave him a choice of alternatives in words like these:

" ' Return those securities to your father within twenty-four hours or get out of Brooklyn.   You can't keep them and continue to live in this City, where your family has held an honorable and distinguished position.'

" The securities were returned.   They were all turned over to S. V. White, who handled them to the best advantage for Dr. Edward Beecher, releasing the faithful coterie from further donations."

The court, upon the second trial, left it substantially to the jury to say whether the article intended to charge, so that people of ordinary comprehension would so understand it, that the plaintiff had kept possession of his aged father's securities in a dishonorable way and that if such was the fair import of the article the statements and suggestions, if untrue, afforded a right of action, because the sting to character may thus be as assuredly inflicted as by a more bold and direct assertion.   The court also allowed the jury to find, if an innuendo in the complaint was necessary at all, that the one stated in the complaint that the crime of larceny was intended, as the greater included the less, would cover a milder charge of the same generic character; and also that, under our system of pleading, based upon the cardinal idea of having the facts pleaded and allowing the inferences from those facts to be drawn by the silent operation of the law, an innuendo was of little use, provided the fair and natural import of the words of the libelous article brought the minds of the readers to the hurtful conclusion.   Otherwise, we would magnify the force of a pleading beyond its real reason and occasion, and put technical rules, however hoary they had grown by age, above the results of substantial justice.

It will thus be seen that the trial court went as far as proper deference to the opinion of the Appellate Division would allow, and that the jury has pronounced against the plaintiff in his claim that substantial hurt has come to him by this article.   I cannot hold there was no defense except a diminution of damages.

After the serious consideration of the evidence relating to a

charge of substantial injury to character, it would be grotesque to give deliberate attention to a claim for six cents damages and six cents costs on the plea of the right to a nominal verdict; nor do I understand that counsel for the plaintiff asks that this court shall do so.   Motion for new trial denied.

Motion denied.